BERNARD B. SMYTH (Cal. Bar No. 217741)
 smythb@sec.gov
MONIQUE C. WINKLER (Cal. Bar No. 213031)
JEREMY E. PENDREY (Cal. Bar No. 187075)
ROBERT J. DURHAM (N.Y. Bar No. 2973022)
 durhamr@sec.gov
KASHYA K. SHEI (Cal. Bar No. 173125)
 sheik@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2800
San Francisco, California 94104-4802
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 3:22-cv-621 |
| Plaintiff, | |
| v. | COMPLAINT |
| AMERICAN EQUITIES, INC., AMERICAN EAGLE MORTGAGE MANAGEMENT, LLC, ROSS C. MILES and MAUREEN T. WILE, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY OF THE ACTION

1. This action concerns a years-long fraud by Defendants American Equities, Inc., American Eagle Mortgage Management, LLC, Ross C. Miles and Maureen T. Wile (collectively, "Defendants") on investors in 15 private investment funds (the "Funds") Defendants managed. The Funds were designed to pool investor money, through the sale of promissory notes, to invest in mortgages and trust deeds secured by real estate (the "Receivables"), with investor returns to be paid primarily from the interest the Receivables generated and the profits made when the Receivables were sold. However, by approximately 2007, the Funds had become insolvent. In order to hide the Funds' insolvency and keep their enterprise afloat, Defendants improperly commingled the Funds' assets and used new investor money to make payments due to existing investors, as in a Ponzi scheme.

2. Separately, Defendants Miles and Wile misappropriated fund assets by making unauthorized payments to themselves, family members and other related parties, which were reflected in the Funds' accounting records as loans. In actuality, many of these purported loans lacked basic documentation such as loan agreements, payment terms and interest rates, and violated the Funds' own underwriting standards.

3. As many of the purported loans were in fact unauthorized payments to Defendants Miles and Wile and parties related to them, approximately $8.7 million remains unpaid and owed to the Funds.

4. From about July 2011 through May 2019, Defendants raised approximately $15.5 million from investors without disclosing to the investors the insolvent financial condition of the Funds and, in contravention to the representations made to investors, Defendants' misuse of investor proceeds.

5. By May 2019, the enterprise consisting of the 15 Funds managed by Defendants collapsed because they were insolvent and unable to make required payments to investors or

redeem investors as their promissory notes became due. A Washington State court ordered the Funds into receivership.

6. By their actions, Defendants violated the antifraud provisions of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") in connection with the offer and sale of securities issued by the 15 Funds they managed.

7. The Commission requests, among other things, that the Court: (i) permanently enjoin Defendants from further violating the federal securities laws as alleged in this complaint; (ii) prohibit Defendants Miles and Wile from acting as officers or directors of any publicly traded company; (iii) order Defendants to pay disgorgement with prejudgment interest; and (iv) order Defendants to pay civil monetary penalties.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d) and 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

9. Defendants, directly or indirectly, made use of the means and instruments of interstate commerce or of the mails in connection with the acts, transactions, practices, and courses of business alleged in this complaint.

10. Venue in this District is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because acts and transactions constituting violations alleged in this Complaint, including the fraudulent offer and sale of securities to Oregon residents, occurred within the District of Oregon.

11. Assignment to the Portland Division of this Court is proper because a substantial part of the events or omissions that give rise to claims alleged in this Complaint occurred in Clackamas, Clatsop, Multnomah and Washington counties, Oregon.

**DEFENDANTS**

12. American Equities, Inc. ("AEI") is a Washington corporation formed in 1984 and located in Vancouver, Washington. AEI was a manager of 15 Funds that invested in mortgages and trust deeds secured by real estate.

13. American Eagle Mortgage Management, LLC ("AEMM") is a Washington company located in Vancouver, Washington that Defendants Ross C. Miles and Maureen T. Wile formed in October 2010 which, in approximately February 2011, assumed AEI's role as the manager of the 15 Funds. Miles and Wile co-owned AEMM and served as co-managers until early 2022, when Wile resigned.

14. Ross C. Miles ("Miles"), age 72, resides in La Center, Washington. He is the founder, sole owner and president of AEI and co-owner of AEMM. At all relevant times, Miles was ultimately responsible for AEI's and AEMM's management of the Funds.

15. Maureen T. Wile ("Wile"), age 70, resides in Vancouver, Washington. During the events described below, she was the secretary of AEI, co-owner and co-manager of AEMM, and ran the operations of both entities in their management of the Funds, including making daily decisions about the management of the Funds.

**RELATED ENTITY**

16. American Eagle Mortgage 600, LLC ("Fund 600") is a Washington company formed in 2009 by AEI. It is the last of the 15 Funds that AEI formed from 2003 through 2009. Fund 600, like the others, raised money from investors in exchange for promissory notes that carried a fixed interest rate, the amount of which depended on whether the investor chose a one, five, ten or fifteen-year investment term. The promissory notes were sold with accompanying ownership interests in Fund 600. The Private Placement Memorandum ("PPM") for Fund 600 stated that Fund 600's business was to invest in receivables secured by real estate in the United States and Mexico. From 2009 through 2018, Fund 600 raised money from investors in multiple states, including dozens in Oregon. In May 2019, a Washington State court placed Fund 600 and the other funds into receivership.

## FACTUAL ALLEGATIONS

### A. Background

17. In approximately 2003, Miles and Wile, through AEI, created the first of the 15 Funds, and offered and sold to investors securities consisting of promissory notes accompanied by an ownership interest in that fund.

18. After the creation of the first fund, approximately every six to twelve months, Defendants created a new fund and offered and sold the fund's securities to investors. Some of the fund offerings overlapped and, by 2009, Defendants had offered and sold securities in 13 additional funds. In 2009, Defendants created, and began to offer and sell to investors securities of Fund 600, the last of the 15 Funds.

19. Since 2011, approximately 84 percent of the new cash for investment raised by the Funds has been in Fund 600.

20. Initially, Miles was the person responsible for the daily operations of Defendant AEI. Subsequently, and by at least 2011, Wile took over the day-to-day operations of the Funds, first through Defendant AEI and later through Defendant AEMM. Miles remained the ultimate decision maker for Defendants AEI and AEMM (collectively, the "Manager").

21. Defendants AEMM and AEI operated in the same office, and most employees worked for both entities.

### B. Defendants Miles and Wile Approved and Signed the Offering Materials

22. With each Fund offering, including Fund 600, the Manager provided investors with offering materials, including a PPM, the fund's Limited Liability Company ("LLC") Agreement, the fund's Management Agreement, and a list of Minimum Underwriting Criteria for Receivables (the "Offering Materials").

23. Miles and Wile directed the drafting of the PPMs and approved and reviewed the language of the PPMs. Miles signed both the LLC and Management Agreements, which were exhibits to the PPMs, as president of AEI, and Wile signed both agreements as secretary of AEI.

24. The language of the Offering Materials for the Funds was largely the same, varying mostly as to the timing of the offering, the amount sought to be raised, and the location of the real estate that secured the fund's Receivables (e.g., in the U.S., Mexico or both).

25. According to the Offering Materials, investor funds would "be used exclusively to acquire the Receivables, pay the costs associated with the Offering, and cover working capital needs of the [fund]." The Receivables would generate revenue from monthly mortgage payments by borrowers, mortgage payoffs and the sale of Receivables, which would be used to pay investor returns.

26. At the time of making their investment, investors had the option to reinvest their monthly interest payments, and within 90 days of the end of their investment term, to reinvest the principal payments due to them. Many investors elected one or both of these options.

27. The Offering Materials described the Manager's underwriting process and provided that the Manager would take steps to ensure that the Receivables were evidenced by promissory notes and other documents reflecting the borrower's obligation to pay and that these would contain commercially reasonable terms and conditions. Each receivable would be secured by a single parcel of real property, and meet a certain loan-to-value ratio depending on the type of property.

28. In addition, the Offering Materials provided that the Manager would segregate the Funds' assets and not allow them to be commingled with assets of the Manager or any other fund.

**C. The Fraudulent Scheme**

   i.   Defendants Commingled Fund Assets and Made Ponzi-Like Payments to Investors

29. Since approximately 2008, Wile knew or was reckless in not knowing that the Funds were insolvent because she received periodic reports showing the financial condition of the Funds, including which funds lacked the cash revenue necessary to make monthly payments to investors. Based on these reports, Wile, in consultation with Miles, directed employees of the

Manager to transfer money from one fund to other funds in order to make investor payments, which resulted in extensive commingling of assets among the Funds.

30. In approximately 2008, well before the formation of Fund 600, Miles as the owner and president of the Manager and the Manager's ultimate decision maker, knew that the Funds were insolvent because he had frequent meetings with Wile and received many of the same reports showing the dire financial condition of the Funds. Miles also knew of the commingling of funds and the use of new investor money to pay existing investors.

31. Although Defendants were aware, by the time Fund 600 was created in 2009, that the then-existing funds were insolvent and that investor monies were commingled among the Funds, from 2009 through at least 2018, both Miles and Wile continued to raise money from investors for Fund 600 and directed the Manager's employees to continue to raise money from investors.

32. The Offering Materials Defendants provided to Fund 600 investors before they made their investments contained false and misleading representations. For example, the Offering Materials falsely stated that investor funds would be used primarily for the purchase of Receivables. In fact, much of the money raised was commingled with the existing funds and used to pay interest payments to investors in those other funds.

33. The Offering Materials Defendants provided to Fund 600 investors also prohibited the commingling of money among the Funds and did not permit the use of new investor money to pay interest payments due to existing investors. Nevertheless, as late as 2017, Wile specifically instructed an employee of the Manager to raise new investor money for Fund 600 in order to make payments due to existing investors in the other funds.

34. Defendants Miles and Wile knew, or were reckless in not knowing, that the assets of the Funds were being commingled, that new investor money was being used to pay existing investors, and that these actions were not disclosed to investors. They also knew, or were reckless in not knowing, that the Offering Materials were materially false and misleading

because the Offering Materials provided that assets would not be commingled and that investor money was to be used primarily to purchase Receivables.

    ii.    <u>Defendants Failed to Disclose Unauthorized Related-Party "Loans"</u>

35. Since at least approximately 2007, Defendants Miles and Wile caused the Funds to make millions of dollars in unauthorized transfers to themselves and parties related to one or both of them. The unauthorized transfers were documented in the Funds' accounting records as loans (hereinafter the purported loans are referred to as "related-party transfers").

36. Although the Funds' accounting records classify the related-party transfers as loans, the related-party transfers were not secured by real estate, despite the fact that the Funds were designed to use investor money to invest in real estate-backed investments. In addition, many of the related-party transfers lacked basic documentation, such as promissory notes evidencing the related party's obligation to repay the Funds, and lacked standard loan terms such as an interest rate and repayment terms, despite the disclosure in the Offering Materials that the Manager would take steps to ensure that the Receivable documents contain commercially reasonable terms and conditions. Instead, many of these related-party transfers were recorded solely by an entry in the Fund's accounting records.

37. Finally, for many of these related-party transfers recorded as loans, no interest or principal payments were ever made. Indeed, in contravention of the representations made in the Offering Materials, Defendants never attempted to collect on these purported loans on behalf of the Funds or to seek other relief outlined in the Offering Materials.

38. As described in paragraphs 36 through 37, the related-party transfers were not legitimate loans. Instead the transfers were used by Defendants to divert investor funds to enrich themselves.

39. Shortly before the Funds were placed into receivership in May 2019, Miles arranged for his personal bookkeeper to provide an employee of the Manager with a list of transfers from Fund 600 to an entity Miles controlled. The employee was asked to create

backdated promissory notes to document these transfers. The employee followed the instruction by creating a backdated note, which Wile signed on behalf of Miles' entity.

40. Defendants Miles and Wile knew, or were reckless in not knowing, that the related-party transfers described above were made in contravention of the representations made in the Offering Materials and that material facts regarding these purported loans were not disclosed to investors, including that the "loans" lacked basic documentation that Defendants sought to backdate, were not secured by real estate, did not meet the Funds' underwriting standards, and the Manager did not attempt to recoup what the Funds were owed.

    iii.    Defendants Continued to Raise Money from Investors

41. Through 2018, the Manager, at the direction of Miles and Wile, continued to raise money from investors using Offering Materials that falsely represented that investor funds would be used to purchase Receivables. In fact, as described above and as Miles and Wile knew or were reckless in not knowing, a significant portion of investor funds were commingled for use by other funds, used to pay amounts due to other investors or used for unauthorized related-party loans.

42. From July 2011 through 2018 alone, the Manager raised a total of approximately $15.5 million from investors (approximately $13.05 million of which was raised in Fund 600), and investors reinvested approximately $9.1 million when their fund investments came to term. In May 2019, when the Funds were placed into receivership, the Funds owed investors over $66 million in principal and interest dating back to 2007, when the Funds became insolvent.

43. At the time Defendants made the misleading statements described above, they knew, or were reckless in not knowing, that the statements were false and misleading because they were either untrue or because they omitted material statements that rendered them false in light of the statements made.

44. Similarly, when Defendants engaged in the deceptive conduct described above, they did so knowingly or recklessly, with the intent to defraud investors, or potential investors, in the Funds.

## TOLLING AGREEMENTS

45. During the investigation conducted by the Commission's staff preceding this action, Defendants AEI, AEMM and Miles each entered into agreements by which they agreed that the running of any statute of limitations applicable to any action or proceeding against them by the Commission, including any sanctions or relief that might be imposed, is tolled and suspended for the periods November 16, 2020 through May 16, 2021 and November 1, 2021 through May 1, 2022.

46. Also during the investigation, Defendant Wile entered into agreements by which she agreed that the running of any statute of limitations applicable to any action or proceeding against her by the Commission, including any sanctions or relief that might be imposed, is tolled and suspended for the periods December 9, 2020 through June 9, 2021 and October 29, 2021 through April 29, 2022.

## FIRST CLAIM FOR RELIEF

**(Violations of Section 17(a) of the Securities Act)**

47. The Commission realleges and incorporates by reference paragraphs 1 through 46.

48. Defendants AEI, AEMM, Miles and Wile, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails,

   (a) with scienter, employed devices, schemes, or artifices to defraud;

   (b) obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers.

49. By reason of the foregoing, Defendants AEI, AEMM, Miles and Wile violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder)**

50. The Commission realleges and incorporates by reference paragraphs 1 through 46.

51. By engaging in the conduct described above, Defendants AEI, AEMM, Miles and Wile, in connection with the purchase or sale of securities, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, with scienter:

   (a) employed devices, schemes, or artifices to defraud;

   (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

   (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

52. By reason of the foregoing, Defendants AEI, AEMM, Miles and Wile violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

I.

Find that each of Defendants AEI, AEMM, Miles and Wile committed the violations alleged herein;

II.

Permanently enjoin Defendants AEI, AEMM, Miles and Wile from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

III.

Order Defendants AEI, AEMM, Miles and Wile to disgorge their ill-gotten gains according to proof, plus prejudgment interest thereon;

IV.

Order Defendants AEI, AEMM, Miles and Wile to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

V.

Enter a Judgment imposing an officer and director bar against Defendants Miles and Wile pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

VII.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

Dated:  April 27, 2022                             Respectfully submitted:


                                                   By:  s/ Bernard B. Smyth
                                                        Bernard B. Smyth (Cal. Bar No. 217741)

                                                        Attorney for Plaintiff
                                                        SECURITIES AND EXCHANGE
                                                        COMMISSION